ACCEPTED
06-14-00056-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
1/16/2015 11:06:27 AM
DEBBIE AUTREY
CLERK

In the
Court of Appeals for the
Sixth District of Texas at Texarkana

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
1/16/2015 11:06:27 AM
DEBBIE AUTREY
Clerk

| | | |
|---|---|---|
| **Gary Moore,** | § | |
| Appellant | § | |
| | § | |
| v. | § | **No. 06-14-00056-CR** |
| | § | |
| **The State of Texas,** | § | |
| Appellee | § | |

Trial Number 296-81210-2013 in the
296th District Court of Collin County
The Honorable John R. Roach, Jr., Judge Presiding

————————————

STATE'S BRIEF

————————————

**Greg Willis**
Criminal District Attorney
Collin County, Texas

**John R. Rolater, Jr.**
Asst. Criminal District Attorney
Chief of the Appellate Division

*Oral argument is not requested*
*unless Appellant requests*
*argument*

**Emily Johnson-Liu**
Asst. Criminal District Attorney
2100 Bloomdale Rd., Suite 200

McKinney, TX 75071
(972) 548-4323
FAX (214) 491-4860
State Bar No. 24032600
ejohnson-liu@co.collin.tx.us

**Haley Hendrix & Wes Wynne**
Asst. Criminal District Attorneys

# Table of Contents

Index of Authorities.............................................................................................iv

Statement Regarding Oral Argument ......................................................1

Statement of the Case .............................................................................1

Statement of Facts...................................................................................1

Summary of the State's Arguments.........................................................6

Argument & Authorities ..........................................................................8

**Issue One**  (Sufficiency of the Theft Offense)...........................................8

> The evidence is sufficient to establish that
> Appellant intended to deprive Wal-Mart of the
> property he abandoned just inside the exit
> door. Appellant made a deliberate path toward
> a deserted exit with several high-end items,
> repeatedly looked over his shoulder as he went,
> and abandoned his advance toward the exit
> only when startled by the sudden appearance of
> a police car outside the exit gate.

I.   Standard of review.............................................................................8

II.  The circumstantial evidence was sufficient to establish
     Appellant intended to deprive Wal-Mart of its property ...................9

**Issues Two and Three** (Alleged indictment amendment &
Sufficiency of a jurisdictional prior)......................................................16

> Because no actual amendment to the
> indictment took place, there was no error
> stemming from the trial court's decision to
> permit an amendment over the defense
> objection on the day trial began. Even though

the indictment was not actually amended, this did not result in a material variance between pleading and proof as the prosecutor was merely trying to alter the name of the convicting court for one of the jurisdictional prior convictions alleged in the indictment.

I.   Additional relevant facts .................................................................16

II.  State's motion to amend ..................................................................18

   A.   The indictment was never amended, so there was no reversible error in granting the State's motion to amend...........18

   B.   Even if the amendment was effective, any error in permitting the amendment was harmless ..................................22

III. Sufficiency of the jurisdictional prior in light of the variance between pleading and proof...............................................................23

**Issue Four** (Sufficiency to prove punishment enhancement paragraphs)........................................................................................27

This Court should not reach Appellant's complaint concerning the sufficiency of the State's proof of prior convictions alleged for punishment enhancement because Appellant waived his right to appeal punishment issues in exchange for an agreed 5-year sentence. In any case, there was sufficient proof of two sequential non-theft felony convictions to support enhancement to a second-degree felony.

I.   Appellant knowingly waived his right to appeal sentencing issues...............................................................................................27

II.  Sufficient evidence supports enhancement to a second-degree felony...............................................................................................31

**Issue Five** (Details of Appellant's prior theft convictions) ...................35

> It was not error to inform the jury of the details of Appellant's prior theft convictions either through the State's evidence of those prior convictions or in the jury charge. Appellant pleaded true to the prior theft convictions, which had the effect of removing that element from the jury's consideration. But because Appellant did not ask the State to forgo admitting its evidence of his priors in exchange for his plea of true, he forfeited any complaint about the admission of that evidence. Any error in including the details of the prior offense in the charge was harmless since the jury properly heard the same facts when the State read the indictment.

I.   The law involving jurisdictional priors ............................................35

II.  Admission of other evidence of jurisdictional priors.........................37

III. Details of prior thefts in the jury charge..........................................40

Prayer ...............................................................................................46

Certificate of Service ........................................................................47

Certificate of Compliance ..................................................................47

# Index of Authorities

## Cases

*Almanza v. State,*
  686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g) ..................... 44

*Arce v. State,*
  552 S.W.2d 163 (Tex. Crim. App. 1977) .......................................... 24

*Baker v. State,*
  511 S.W.2d 272 (Tex. Crim. App. 1974) ...................................... 9, 10

*Barnes v. State,*
  513 S.W.2d 850 (Tex. Crim. App. 1974) .......................................... 10

*Blanco v. State,*
  18 S.W.3d 218 (Tex. Crim. App. 2000) ...................................... 28, 29

*Brooks v. State,*
  323 S.W.3d 893 (Tex. Crim. App. 2010) ....................................... 8, 13

*Brown v. State,*
  No. 06-11-00127-CR, 2012 WL 899225 (Tex. App.—Texarkana
  Mar. 16, 2012, pet. ref'd) (not designated for publication)............... 25

*Bryant v. State,*
  187 S.W.3d 397 (Tex. Crim. App. 2005) .......................................... 42

*Butler v. State,*
  No. 01-10-00725-CR, 2012 WL 1379628 (Tex. App.—Houston [1st
  Dist.] Apr. 19, 2012, no pet.) (not designated for publication)......... 10

*C.L.A. v. State,*
  478 So.2d 872 (Fla. Dist. Ct. App. 1985) ........................................ 13

*Chambers v. State,*
  736 S.W.2d 192 (Tex. App.—Dallas 1987, no pet.).......................... 32

*Chandler v. State,*
  21 S.W.3d 922 (Tex. App.—Houston [14th Dist.] 2000, no pet.)...... 42

*Dukes v. State*,
   239 S.W.3d 444 (Tex. App.—Dallas 2007, pet. ref'd) ....................... 22

*Duncan v. State*,
   850 S.W.2d 813 (Tex. App.—Houston [14th Dist.] 1993, no pet.).... 21

*Dunn v. State*,
   08-02-00516-CR, 2004 WL 1858352 (Tex. App.—El Paso Aug. 19,
   2004, pet. ref'd) (not designated for publication) ............................ 39

*Ex parte Garza*,
   192 S.W.3d 658 (Tex. App.—Corpus Christi 2006, no pet.) ............. 29

*Ex parte Huskins*,
   176 S.W.3d 818 (Tex. Crim. App. 2005) .......................................... 26

*Ex parte Tabor*,
   565 S.W.2d 945 (Tex. Crim. App. 1978) .......................................... 28

*Faris v. State*,
   No. 06-12-00019-CR, 2012 WL 4459598 (Tex. App.—Texarkana
   Sept. 26, 2012, pet. ref'd) (not designated for publication) .............. 29

*Faulkner v. State*,
   402 S.W.3d 507 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd)  28

*Foster v. State*,
   603 S.W.2d 879 (Tex. Crim. App. 1980) .................................... 32, 34

*Freda v. State*,
   704 S.W.2d 41 (Tex. Crim. App. 1986) ............................................ 24

*Freeman v. State*,
   413 S.W.3d 198(Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) . 43

*Fuller v. State*,
   253 S.W.3d 220 (Tex. Crim. App. 2008) .......................................... 37

*Geesa v. State*,
   820 S.W.2d 154 (Tex. Crim. App. 1991), *overruled on other grounds
   by Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000) ............ 15

*Gonzalez v. State,*
No. 13-05-115-CR, 2006 WL 488681 (Tex. App.—Corpus Christi Mar. 2, 2006, no pet.) (not designated for publication) .................... 42

*Guevara v. State,*
152 S.W.3d 45 (Tex. Crim. App. 2004) ............................................. 9

*Harvey v. State,*
611 S.W.2d 108 (Tex. Crim. App. 1981) ......................................... 41

*Hawkins v. State,*
214 S.W.3d 668 (Tex. App.—Waco 2007, no pet.) ........................... 10

*Hollen v. State,*
117 S.W.3d 798 (Tex. Crim. App. 2003) .......................................... 40

*Hollins v. State,*
571 S.W.2d 873 (Tex. Crim. App. 1978) ......................................... 24

*Illinois v. Wardlow,*
528 U.S. 119 (2000) ....................................................................... 14

*Jackson v. Virginia,*
443 U.S. 307 (1979) ......................................................................... 8

*James v. State,*
425 S.W.3d 492 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) ... 22

*Lackey v. State,*
881 S.W.2d 418 (Tex. App.—Dallas 1994, pet. ref'd) ....................... 33

*Marbella v. State,*
No. 646-00, 2003 WL 1845140 (Tex. Crim. App. Apr. 9, 2003) (not designated for publication) ........................................................... 36

*Martin v. State,*
200 S.W.3d 635 (Tex. Crim. App. 2006) .................................... 36, 44

*McFarland v. State,*
834 S.W.2d 481 (Tex. App.—Corpus Christi 1992, no pet.) ............. 22

*Minnamon v. State,*
  988 S.W.2d 408 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ...... 36

*Monreal v. State,*
  99 S.W.3d 615 (Tex. Crim. App. 2003) ........................................... 28

*Nall v. State,*
  No. 14-06-00345-CR, 2007 WL 2481171 (Tex. App.—Houston [14th
  Dist.] Sept. 4, 2007, no pet.) (not designated for publication) ......... 39

*Old Chief v. United States,*
  519 U.S. 172 (1997) ....................................................................... 35

*Perez v. State,*
  429 S.W.3d 639 (Tex. Crim. App. 2014) .................................... 19, 20

*Perez v. State,*
  885 S.W.2d 568 (Tex. App.—El Paso 1994, no pet.) ........................ 28

*Puente v. State,*
  320 S.W.3d 352 (Tex. Crim. App. 2010) ......................................... 21

*Rawlings v. State,*
  602 S.W.2d 268 (Tex. Crim. App. 1980) ......................................... 31

*Riney v. State,*
  28 S.W.3d 561 (Tex. Crim. App. 2000) ...................................... 19, 20

*Robles v. State,*
  85 S.W.3d 211 (Tex. Crim. App. 2002) ...................................... 38, 39

*Rowland v. State,*
  744 S.W.2d 610 (Tex. Crim. App. 1988) ........................................... 9

*Serna v. State,*
  69 S.W.3d 377 (Tex. App.—El Paso 2002, no pet.) ........................... 21

*Smallwood v. State,*
  827 S.W.2d 34(Tex. App.—Houston [1st Dist.] 1992, pet. ref'd ....... 32

*Sodipo v. State,*
  815 S.W.2d 551 (Tex. Crim. App. 1991) ......................................... 18

*State v. Deaton*,
438 So.2d 1218 (La. Ct. App. 1983) ................................................ 12

*State v. Murk*,
815 S.W.2d 556 (Tex. Crim. App. 1991) .......................................... 18

*Tamez v. State*,
11 S.W.3d 198 (Tex. Crim. App. 2000) ............................................ 36

*Tata v. State*,
446 S.W.3d 456 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) ... 21

*Taylor v. State*,
332 S.W.3d 483 (Tex. Crim. App. 2011) .......................................... 44

*Urbano v. State*,
808 S.W.2d 519 (Tex. App.—Houston [14th Dist.] 1991, no pet.).... 42

*Valenti v. State*,
49 S.W.3d 594 (Tex. App.—Fort Worth 2001, no pet.) ..................... 25

*Villescas v. State*,
189 S.W.3d 290 (Tex. Crim. App. 2006) .......................................... 24

*Ward v. State*,
829 S.W.2d 787(Tex. Crim. App. 1992), *overruled in part by*
*Riney v. State*, 28 S.W.3d 561 (Tex. Crim. App. 2000) ............... 19, 20

*Webb v. State*,
No. 05-00-02104-CR, 2002 WL 851730 (Tex. App.—Dallas May 6,
2002, no pet.) (not designated for publication) ................................ 42

*Wilson v. State*,
520 S.W.2d 377 (Tex. Crim. App. 1975) .......................................... 21

*Woods v. State*,
398 S.W.3d 396 (Tex. App.—Texarkana 2013, pet. ref'd) ................ 42

*Wright v. State*,
28 S.W.3d 526 (Tex. Crim. App. 2000) ............................................ 22

## Statutes

Tex. Code Crim. Proc. art. 1.14(a) ....................................................... 27

Tex. Code Crim. Proc. art. 28.10 ............................................... 18, 20

Tex. Code Crim. Proc. art. 28.11 ........................................... 18, 19, 21

Tex. Code Crim. Proc. art. 37.071 ..................................................... 22

Tex. Penal Code § 12.425(b) ........................................................ 1, 31

Tex. Penal Code § 30.04 ................................................................... 33

Tex. Penal Code § 31.03 ..................................................................... 9

Tex. Penal Code § 31.03(a) ............................................................... 33

Tex. Penal Code § 31.03(e)(4)(D) ............................................. 1, 31, 34

## Rules

Tex. R. App. P. 33.1(a) ..................................................................... 37

Tex. R. App. P. 44.2(b) ............................................................... 22, 23

## Other Authorities

*Evidence Law-Boundaries, Balancing, and Prior Felony Convictions:*
*Federal Rule of Evidence Rule 403 After United States v. Old Chief,*
28 N.M.L. Rev. 583 (1998) ............................................................ 38

## Statement Regarding Oral Argument

The State does not believe oral argument will assist the Court in resolving the issues in this case. However, if oral argument is granted to Appellant, the State requests the opportunity to respond.

## Statement of the Case

Charge.... Third-offender Theft (Theft under $1500 with 2 prior thefts)
Tex. Penal Code § 31.03(e)(4)(D)
CR 11

Further enhanced by two non-theft felonies
Tex. Penal Code § 12.425(b)
CR 56-58

Plea to the Theft Offense........................................................Not Guilty
4 RR 130

Plea to the Two Prior Thefts Alleged for Jurisdiction.................... True
4 RR 131

Verdict (Jury)...........................................................................Guilty
5 RR 33

Agreed Punishment ..............................................5 years' confinement
5 RR 44

## Statement of Facts

Loss Prevention Officer (LPO) Tyler Aroche was watching real-time surveillance at Wal-Mart on December 12, 2012, looking for shoplifters. 4 RR 136-37. Around 9:30 p.m., he noticed Appellant grab

1

several portable DVD players off the shelf, "one after another, without looking at the price." 4 RR 137-38. Aroche had been trained to look for certain behaviors typical of shoplifters, and this was one such behavior: quickly selecting items in multiples without first pausing to verify the price. 4 RR 137, 156, 162. LPOs were also trained to look for customers selecting "high dollar" items. 4 RR 137.

As Aroche continued his remote observation, he saw Appellant continually looking around. 4 RR 137. In Aroche's experience, people who are shoplifting look around to see if they are being watched, and he believed this was what Appellant was doing. 4 RR 137, 157. Aroche noticed that Appellant would leave the DVD players behind in the shopping cart while he walked around the electronics department, "constantly looking around." 4 RR 138-40. Instead of looking at merchandise, Appellant was repeatedly looking over his shoulder. 4 RR 140. It appeared to Aroche that he was looking to see if anyone was watching him. 4 RR 140. This behavior was not consistent with that of the typical shopper that Aroche observed on a daily basis. 4 RR 148. The usual shopper does not leave their cart to walk around nervously as Appellant did. 4 RR 148.

Because he believed there was a theft in progress, Aroche (who was dressed in plain clothes) left the LPO office to observe Appellant in person and called 911. 4 RR 139. Appellant, meanwhile, returned to his shopping cart and began walking toward the garden center. 4 RR 140. That part of the store was already closed for the night, and no employees were present to ring up purchases. 4 RR 140-41, 155.

In Aroche's experience, the garden center was a common place for shoplifters to try to leave the store with merchandise, particularly since few people could be found in that part of the store at night. 4 RR 141. That night was no exception; the garden center was "pretty deserted." 4 RR 159.

Aroche saw Appellant "walking with some purpose" through the garden center, pushing the shopping cart past the last cash register inside the store building and then outdoors onto the partly covered outdoor garden center area. 4 RR 141-42, 151-52, 159. He did not stop to look at any merchandise in the garden center but was looking behind him as he went. 4 RR 141, 145; SX 1 (Part 6) at 9:17:20.

Just as he was reaching the darkened portion of the patio outside, car lights appeared through the gate in front of him, and

3

Appellant stopped, turned his head, and looked outside. 4 RR 142; SX 1 (Part 6) at 9:17:21. Aroche saw at that moment that a police cruiser had "just arrived" and was visible from inside the garden center. 4 RR 141-42, 168. Appellant took his hands off the cart, left the cart behind, and walked back into the main part of the store and out the front exit, continuing to look over his shoulder nervously. 4 RR 142.

After Aroche had called 911, Plano Police Officer Kyle Norton, and several other police units responded to the Wal-Mart, and Officer Norton met Appellant at the front exit. 4 RR 166, 168. Aroche told Officer Norton that he had seen Appellant approach the garden center exit with items he had not purchased and that Appellant had looked out and was "startled." 4 RR 169. As to what may have startled Appellant, Aroche told Officer Norton he believed Appellant had seen the officer positioned at the garden center exit. 4 RR 169. Officer Norton also found it significant that Appellant had gone out "completely opposite doors from where he was at, and there was a door right there that he could have used." 4 RR 172.

When Officer Norton asked Appellant about what had happened, the only thing Appellant said was that he had stopped to

shop at the Wal-Mart on his way home after a gambling trip to Oklahoma. 4 RR 169.

The merchandise Appellant left behind in the shopping cart near the garden center exit included five portable DVD players, two rolls of wrapping paper, and two decorative pillows, totaling $561.76. 4 RR 149; SX 2. Officer Norton arrested Appellant, and he was later indicted for theft under $1,500 with two prior theft convictions. 4 RR 170; CR 11.

## Summary of the State's Arguments

*State's Reply to Issue One:*

The evidence is sufficient to establish that Appellant intended to deprive Wal-Mart of the property he abandoned just inside the exit door. Appellant made a deliberate path toward a deserted exit with several high-end items, repeatedly looked over his shoulder as he went, and abandoned his advance toward the exit only when startled by the sudden appearance of a police car outside the exit gate.

*State's Reply to Issues Two & Three:*

Because no actual amendment to the indictment took place, there was no error stemming from the trial court's decision to permit an amendment over the defense objection on the day trial began. Even though the indictment was not actually amended, this did not result in a material variance between pleading and proof as the prosecutor was merely trying to alter the name of the convicting court for one of the jurisdictional prior convictions alleged in the indictment.

*State's Reply to Issue Four:*

This Court should not reach Appellant's complaint concerning the sufficiency of the State's proof of prior convictions alleged for punishment enhancement because Appellant waived his right to appeal punishment issues in exchange for an agreed 5-year sentence. In any case, there was sufficient proof of two sequential non-theft felony convictions to support enhancement to a second-degree felony.

*State's Reply to Issue Five:*

It was not error to inform the jury of Appellant's specific prior theft convictions either through the State's evidence of those prior convictions or in the jury charge. Case law does not prohibit the jury charge from specifying the details of a defendant's prior convictions. And since he did not object to the admission of evidence, Appellant forfeited any error in the admission of the State's exhibits. Although Appellant pleaded true to the prior theft convictions, he forfeited any complaint about the admission of the details of those convictions by failing to proffer a written stipulation in lieu of the State's evidence of his priors.

Argument & Authorities

**Issue One**
(Sufficiency of the Theft Offense)

> The evidence is sufficient to establish that Appellant intended to deprive Wal-Mart of the property he abandoned just inside the exit door. Appellant made a deliberate path toward a deserted exit with several high-end items, repeatedly looked over his shoulder as he went, and abandoned his advance toward the exit only when startled by the sudden appearance of a police car outside the exit gate.

## I. Standard of review

In determining whether the evidence is sufficient, a reviewing court views all the evidence in the light most favorable to the State and determines whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318 (1979); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). This standard ensures that it remains the jury's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson,* 443 U.S. at 319.

## II. The circumstantial evidence was sufficient to establish Appellant intended to deprive Wal-Mart of its property

A person commits the offense of theft if he unlawfully appropriates property with the intent to deprive the owner of the property. Tex. Penal Code § 31.03. Intent to deprive may be established by showing the defendant actually deprived the owner of his property. *Rowland v. State,* 744 S.W.2d 610, 612 (Tex. Crim. App. 1988). But actual deprivation is not an element of theft, and intent to deprive may be established by other evidence. *Id.* Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the defendant. *Guevara v. State,* 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Appellant complains that the evidence in the instant case did not show he intended to deprive Wal-Mart of property since he did not attempt to conceal any merchandise and did not actually remove it from the premises. App. Brief at 11. But neither fact is required for theft. As early as 1974, the Court of Criminal Appeals held that removal of the property from the premises was not required to establish the offense theft. *Baker v. State,* 511 S.W.2d 272, 272 (Tex. Crim. App. 1974). In *Baker,* the defendant scaled the fence of a

company, moved a 200-pound valve two or three feet from its original position with the help of his accomplice, and was apprehend as he climbed back over the fence. *Id*. The Court found this evidence sufficient for theft. *Id*. In yet another case, the Court upheld a conviction for vehicle theft when the defendant got into a car that had its key still in the ignition, started the motor, and had only put his hands on the steering wheel when several off-duty police officers (who were in charge of the car) arrested him. *Barnes v. State*, 513 S.W.2d 850, 850 (Tex. Crim. App. 1974). The *Barnes* Court held that the taking was complete although the defendant was interrupted before he had time to abscond with the property. *Id*. at 851.

More recently, the Waco Court of Appeals reaffirmed the same proposition—that property need not be removed to constitute theft. *Hawkins v. State*, 214 S.W.3d 668, 670 (Tex. App.—Waco 2007, no pet.). In *Hawkins*, the defendant picked up a roll of barbed wire from a store at night, dropped it when he was startled by an employee, and fled. *Id*. The court rejected the notion that the State had to prove actual removal of the property before there could be a completed theft. *Id*.; *see also Butler v. State*, No. 01-10-00725-CR, 2012 WL

1379628 (Tex. App.—Houston [1st Dist.] Apr. 19, 2012, no pet.) (not designated for publication) (finding defendant's conduct sufficient to establish intent for theft from Best Buy despite his re-shelving the cell phone he had put in his pants when the front doors failed to open when he tried to leave the store).

The evidence in the instant case is likewise sufficient primarily because it shows that Appellant all but removed the property from the unstaffed exit and only failed to remove the property from the premises because he did not want to be caught by a police officer waiting outside the exit.

But Appellant's intent to steal may be inferred from the entirety of his conduct. First, he put multiple expensive items in his cart without pausing to look at the price. This was a small indication of theft because for someone who was not going to be paying for the DVD players, the price would be immaterial. The inference that Appellant was committing a theft became still stronger when he left his shopping cart and looked up and down the aisles, paying attention to what people might be around, instead of the merchandise. To the

trained loss prevention officer, this was not normal shopping behavior.

Appellant's suspicious behavior took on nefarious intent when he pushed the cart "with some purpose" into a deserted area of the store, looking behind him as he went. 4 RR 137-140, 148, 157. Contrary to Appellant's assertions in the brief, the surveillance footage captures Appellant repeatedly looking over his shoulder as he walked through the garden center and toward the darkened exit:



SX 1 (Part 6) at 9:17:20. Other courts have found a defendant's conduct of repeatedly checking over his shoulder to be a factor indicative of theft. *See, e.g., State v. Deaton*, 438 So.2d 1218, 1220 (La. Ct. App. 1983) (finding evidence sufficient to establish required intent for theft when defendant hid items in trash can in shopping cart, repeatedly checked over her shoulder to make sure no one was

12

watching, and attempted to exit store with goods at unattended checkout aisle); *C.L.A. v. State,* 478 So.2d 872 (Fla. Dist. Ct. App. 1985) (sufficient evidence of theft as a party when juvenile distracted store clerk and looked over shoulder for persons who might be watching while his companion pried open jewelry case).

Added to this conduct is the coincidence of Appellant's decision to abandon the cart on the threshold of the deserted exit at the very moment a police car appeared outside. Aroche testified that when Appellant abandoned the cart, a police cruiser had "just arrived" and was visible from inside the garden center. 4 RR 141-42, 168. And at the time, Aroche described Appellant as having been "startled." 4 RR 169. Given the jury's guilty verdict, they must have found Aroche's account of the timing of events credible, a fact finding that is entitled to deference on appeal. *See Brooks*, 323 S.W.3d at 899 ("in the light most favorable to the verdict" means the reviewing court must defer to the jury's credibility determinations).

Furthermore, the surveillance footage corroborates the appearance of a car right as Appellant was at the threshold of the darkened patio in front of the gate. SX 1 (Part 6) at 9:17:21. It also

shows that the car caught Appellant's attention, because Appellant stopped the cart, turned his head, and looked outside before abandoning the cart and walking in the opposite direction. *Id*. at 9:17:21. From this evidence, it was a reasonable deduction for the jury to believe that but for the sudden appearance of the police car, Appellant would have exited the store with the unpaid-for merchandise.

One final indicator of Appellant's nefarious intent came from Officer Norton, who testified that Appellant went out of his way to avoid exiting near the police car and instead left through an exit that was in an entirely different part of the store. 4 RR 172. This evidence of flight, even at a slow speed, furthers the inference that Appellant was intending to deprive Wal-Mart of its property until the police showed up and he risked being caught. Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

Appellant's intent to steal is apparent in the sum of all his actions: how he selected the merchandise, kept watch over who might

be observing him, took a deliberate path toward an unstaffed exit, abandoned the merchandise on the sudden appearance of the police, and adopted a circuitous route out of the store when the most direct way out would take him past an officer. From this evidence, the jury was not irrational in believing Appellant was intending to steal.

Appellant points out that he was not concealing anything and did not say anything to indicate his intent was to deprive Wal-Mart of its property. Appellant suggests that it is equally plausible that Appellant was innocently shopping and decided not to make his purchases when he could not find everything he needed. App. Brief at 11, 13-14. But the State no longer has to exclude every other reasonable hypothesis except that the defendant is guilty. *Geesa v. State*, 820 S.W.2d 154, 160-61 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 572-73 (Tex. Crim. App. 2000). Because the evidence when considered in the light most favorable to the jury's verdict supports the conclusion that Appellant was intending to steal, this issue should be overruled.

## Issues Two and Three
(Alleged indictment amendment & Sufficiency of a jurisdictional prior)

> Because no actual amendment to the indictment took place, there was no error stemming from the trial court's decision to permit an amendment over the defense objection on the day trial began. Even though the indictment was not actually amended, this did not result in a material variance between pleading and proof as the prosecutor was merely trying to alter the name of the convicting court for one of the jurisdictional prior convictions alleged in the indictment.

## I. Additional relevant facts

Before voir dire began on the day of trial, the State asked to amend the indictment allegation regarding Appellant's 1994 jurisdictional prior theft conviction. 4 RR 5. More specifically, the State sought to change the convicting court from "County Court at Law #7," to "County Court at Law #4." *Id.* The following exchange then took place:

THE COURT: Okay. Any objection by the Defense?

MS. NAHAS: Yes, Your Honor, I will object.

THE COURT: Your objection is overruled. The Court is going to allow the amendment as a clerical error, not a substantive error.

4 RR 6. No physical interlineation of the indictment took place, and the State has been unable to find in the trial court's file any other document purporting to be an amended indictment. There was no discussion on the record of how the amendment would be carried out. Later that same day, the jury was impaneled and sworn. 4 RR 120.

After the trial court stated it would allow the amendment, Appellant was arraigned outside the jury's presence and indicated he would enter a plea of not true to the jurisdictional priors. 4 RR 9. Then before the jury, the defense changed course and pleaded true to Appellant's two jurisdictional priors: the one from 2004 (paragraph 2) and the one from 1994 (paragraph 3) that had allegedly been amended. 4 RR 9, 129, 131. Then at trial, the State introduced the judgment and sentence (J & S) from both convictions. 4 RR 134; SX 3 & 4. The J & S for the 1994 conviction reflected that Appellant's theft conviction had indeed occurred in the El Paso County Court at Law #4, not #7, as alleged. SX 3.

## II. State's motion to amend

### A. The indictment was never amended, so there was no reversible error in granting the State's motion to amend

By statute, the State may amend the indictment before the day on which trial begins, but once trial commences, the State may not amend the indictment over the defense objection. Tex. Code Crim. Proc. art. 28.10; *State v. Murk*, 815 S.W.2d 556, 558 (Tex. Crim. App. 1991). Case law governs the window of time in the middle, i.e., amendments on the day of, but *before*, trial actually begins. *Sodipo v. State*, 815 S.W.2d 551, 555 (Tex. Crim. App. 1991) (op. on reh'g). As with amendments after trial begins, amendments earlier in the day (like before voir dire, but on the same day that the jury was later impaneled and the first witness testified) are prohibited over a defense objection. *Sodipo*, 815 S.W.2d at 556.

While the trial court in the instant case may have been wrong to grant the State's motion to amend on the day trial began, no error occurred in the instant case because the indictment was not actually amended. The Code of Criminal Procedure provides that "[a]ll amendments of an indictment . . . shall be made with the leave of the court *and* under its direction." Tex. Code Crim. Proc. art. 28.11

(emphasis added). Because of Article 28.11, when the State wishes to amend a pleading, it must first get the trial court's permission. *Perez v. State*, 429 S.W.3d 639, 642 (Tex. Crim. App. 2014). The motion is not the amendment, but only a request. *Id.* Further, the ruling on the motion is only the court's leave to amend, and is not itself the amendment. *Id.* Here, the trial court gave its leave to amend, but no actual amendment took place.

The rules of what is necessary to amend an indictment have relaxed in recent years. Formerly, the only way to amend the indictment was physical interlineation on the face of the indictment. *Ward v. State,* 829 S.W.2d 787, 793 (Tex. Crim. App. 1992), *overruled in part by Riney v. State*, 28 S.W.3d 561, 566 (Tex. Crim. App. 2000). Now other methods are possible, such as having the trial court read the changes into the record and incorporate an amended photocopy of the indictment into the clerk's file, as was done in *Riney*. *Riney*, 28 S.W.3d at 563. In *Perez*, the State filed a written motion to amend and attached an exhibit that set out the amended language. *Perez*, 429 S.W.3d at 640-41. The parties and the judge then agreed on the record that the exhibit (which became part of the appellate record)

would replace the substantive parts of the indictment, without the need for pasting these changes over the original indictment. *Id.* This, too, was held sufficient. *Id.*

Despite the liberalization of the requirements for amendment, the Court of Criminal Appeals has never abandoned the concept that "[n]either the motion [to amend] itself nor the trial judge's granting thereof is an amendment; rather the two comprise the authorization for the eventual amendment of the charging instrument pursuant to Article 28.10." *Riney*, 28 S.W.3d at 565 (quoting *Ward v. State*, 829 S.W.2d at 793). Consequently, something more must be done beyond the granting of the trial court's permission to amend.

Here, the trial court stated that it would allow the amendment, but there is no evidence of any second step—that the indictment was interlineated or that any written document intended to be treated as the amended indictment was created and filed in the records of the case. Unlike in *Riney* and *Perez*, there was no discussion on the record of the mechanics of how the amendment would be effectuated. *See Riney*, 28 S.W.3d at 566; *Perez*, 429 S.W.3d at 641. The trial court in the instant case never "directed" how the amendment would take

place, as required by Article 28.11. And there was nothing in writing other than the original indictment to constitute the live pleading in the case. *See Puente v. State*, 320 S.W.3d 352, 358 (Tex. Crim. App. 2010) (finding that an alteration to a judicial confession, even when it is reduced to writing, is decidedly *not* a charging instrument, and thus could not constitute amendment of the indictment); *see also Wilson v. State*, 520 S.W.2d 377, 379 (Tex. Crim. App. 1975) (explaining that "[i]t is, of course, not sufficient to say that the accused knew with what offense he was charged, but the inquiry must be whether the charge in writing furnished that information in plain and intelligible language"); *Serna v. State*, 69 S.W.3d 377, 380 (Tex. App.—El Paso 2002, no pet.) (requiring more than that the amendment be memorialized in writing somewhere within the record to constitute a live pleading).

Because the indictment was never effectively amended, no reversible error exists from the granting of the State's motion to amend the indictment. *See Tata v. State*, 446 S.W.3d 456, 462 (Tex. App.—Houston [1st Dist.] 2014), *petitions for discretionary review filed by both State and defense in PD-1195-14); Duncan v. State*, 850

S.W.2d 813, 815 (Tex. App.—Houston [14th Dist.] 1993, no pet.); *McFarland v. State*, 834 S.W.2d 481, 484 (Tex. App.—Corpus Christi 1992, no pet.).

## B. Even if the amendment was effective, any error in permitting the amendment was harmless

As numerous courts (including the Dallas Court of Appeals) have recognized, error in permitting an untimely amendment of the indictment over a defense objection can be harmless error. *See Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000) (holding that attempted amendment of offense date in indictment could not have harmed defendant when "on or about" language already put defendant on notice of approximate date), *superseded on other grounds by Code Crim. Proc. art. 37.071*; *James v. State*, 425 S.W.3d 492, 500 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (finding harmless the error in allowing amendment of punishment enhancement); *Dukes v. State*, 239 S.W.3d 444, 447-78 (Tex. App.—Dallas 2007, pet. ref'd) (holding that improper amendment regarding victim's address on day of trial was harmless error). Under Rule of Appellate Procedure 44.2(b), any statutory "error, defect, irregularity,

or variance that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b).

Here, even if the amendment was effective, it did not affect Appellant's substantial rights to permit the late amendment. As is shown in the next section, Appellant was not entitled to an acquittal, had the indictment been left uncorrected. And Appellant would have been able to identify the prior conviction regardless of whether it was alleged as County Court Number 4 or Number 7. After all, the indictment correctly alleged several descriptors for Appellant's 1994 prior conviction, including the date of conviction, the name Appellant was convicted under, the title of the offense, and the county of conviction. *Compare* CR 11 *with* SX 3. And all of these allegations conformed to the State's proof admitted at trial. SX 3. Appellant has never argued that he was surprised by the amendment or that he was unable to mount a defense because of the late amendment. Consequently, any error was harmless.

## III. Sufficiency of the jurisdictional prior in light of the variance between pleading and proof

When it comes to punishment enhancements, prior convictions are not required to be alleged with the same particularity that must

be used in charging on the primary offense. *Freda v. State,* 704 S.W.2d 41, 42 (Tex. Crim. App. 1986). The accused is entitled to a description of the judgment of former conviction that will enable him to find the record and prepare for a trial on the question of whether he is the convictee named in the judgment. *Villescas v. State,* 189 S.W.3d 290, 293 (Tex. Crim. App. 2006) (citing *Hollins v. State,* 571 S.W.2d 873, 875 (Tex. Crim. App. 1978)). Where a variance is shown in the enhancing portion of an indictment, it does not automatically render the evidence insufficient; the accused is instead required to show that the variance resulted in surprise, to his or her prejudice. *Freda,* 704 S.W.2d at 43. Variances between an enhancement allegation and the proof in regard to cause numbers, courts, and dates of conviction have all been held to be immaterial. *Id.* at 42–43; *Arce v. State,* 552 S.W.2d 163, 164 (Tex. Crim. App. 1977) (finding enhancement paragraph provided adequate notice to enable the accused to locate the prior felony convictions alleged where the State alleged the cause number, county, and date of conviction, but omitted the designation of the court in which Arce was convicted).

The law concerning punishment enhancements has been extended to jurisdictional priors as well. In *Valenti v. State*, the Fort Worth Court of Appeals held that a variance between the indictment and proof concerning the date of conviction for a jurisdictional prior alleged for felony DWI was not material where the defendant was neither surprised by the variance nor misled to his prejudice. *Valenti v. State*, 49 S.W.3d 594, 599 (Tex. App.—Fort Worth 2001, no pet.). This Court reached a similar result in an unpublished decision. *Brown v. State*, No. 06-11-00127-CR, 2012 WL 899225, at *2 (Tex. App.—Texarkana Mar. 16, 2012, pet. ref'd) (not designated for publication) (finding no material variance when one of the prior theft conviction allegations alleged the wrong court of conviction).

Here, there is no indication of any harm from the variance. Regardless of which county court at law had convicted him, Appellant was still conceding the larger point that he had two prior convictions. As argued above, there were sufficient other descriptors of Appellant's 1994 conviction in the indictment to enable him to discern whether he was the person named in the judgment.

Appellant has not complained that he was surprised or prejudiced by the discrepancy between the original indictment allegations and the proof at trial. Indeed, at trial, he had no objection when the State admitted evidence of the two priors.[1] 4 RR 131, 134; SX 3 & 4. And in closing argument, the defense again conceded that he had two prior convictions for theft, arguing that one of the difficult issues for the jury was that they were "already aware of two prior convictions for theft." 5 RR 17. Without a showing of any prejudice, the variance is immaterial, and these two issues should be overruled.

---

[1] Appellant suggests his plea of true to the amended indictment is insufficient to support the element of two prior theft convictions. *See* App. Brief at 21. But even if his plea did not make it clear which allegation he was admitting (the amended or unamended indictment allegation), the State still introduced proof of the two prior convictions in the form of a judgment and sentence for each conviction, and this evidence is sufficient proof along with his admission to two prior thefts to support the prior convictions element. *See* SX 3 & 4. To the extent he uses the judgment in the instant case as evidence that he did not plead true to both prior theft convictions, that argument must fail as the oral pronouncement controls over the written judgment. *Ex parte Huskins,* 176 S.W.3d 818, 820 (Tex. Crim. App. 2005).

> This Court should not reach Appellant's complaint concerning the sufficiency of the State's proof of prior convictions alleged for punishment enhancement because Appellant waived his right to appeal punishment issues in exchange for an agreed 5-year sentence. In any case, there was sufficient proof of two sequential non-theft felony convictions to support enhancement to a second-degree felony.

## I. Appellant knowingly waived his right to appeal sentencing issues

After the jury verdict of guilty, the parties entered an agreement, which the trial court followed, that Appellant receive a 5-year sentence, and among the many rights Appellant was giving up as part of his agreement was a waiver of the right to appeal. SX 9; CR 75. Specifically, that waiver meant that Appellant "will not have the right to appeal anything about the punishment phase." 5 RR 37-38. During the plea proceeding, both Appellant and the prosecutor agreed on the record that the trial court's explanation of the waiver of the right to appeal punishment issues was correct. 5 RR 38.

A defendant may waive any rights secured him by law. Tex. Code Crim. Proc. art. 1.14(a). A valid waiver of the right to appeal, whether negotiated or non-negotiated, will prevent a defendant from

appealing without the consent of the trial court. *See Monreal v. State,* 99 S.W.3d 615, 622 (Tex. Crim. App. 2003); *Faulkner v. State,* 402 S.W.3d 507, 509 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (finding post-guilt-phase waiver of entire appeal was effective, depriving court of appeals of jurisdiction). When a defendant waives his right to appeal after conviction but before sentencing in exchange for the prosecutor's promise to recommend a particular sentence that he then receives, it is not unfair to expect him to live with the consequences of his waiver. *Blanco v. State,* 18 S.W.3d 218, 219-20 (Tex. Crim. App. 2000). Appellate courts will not entertain an attack on the waiver of the right to appeal in the absence of any allegations or proof that the waiver of the right of appeal was coerced or involuntary and where there is nothing in the record suggesting coercion or involuntariness. *Ex parte Tabor,* 565 S.W.2d 945, 946 (Tex. Crim. App. 1978); *Perez v. State,* 885 S.W.2d 568, 570 (Tex. App.—El Paso 1994, no pet.).

Here, Appellant acknowledges that he waived his right to appeal any punishment issues and does not contend that his waiver was in any way ineffective. App. Brief at 22-24. Moreover, he did not

28

get the trial court's permission to appeal this issue, as evidenced by the trial court's certification of the defendant's right to appeal, which states he has the right of appeal, "except for punishment." CR 77. Because Appellant, like the defendant in *Blanco*, was fully aware of the likely consequences when he waived his right to appeal, he should not be able to renege on his waiver of punishment issues. *See* 18 S.W.3d at 220. Consequently, this Court should not address this issue. *See Faris v. State*, No. 06-12-00019-CR, 2012 WL 4459598, at *3 (Tex. App.—Texarkana Sept. 26, 2012, pet. ref'd) (not designated for publication) (declining to consider guilt-phase issues on record that defendant knowingly and willingly waived his right to appeal guilty verdict after consideration given by the State).

Although Appellant has made repeated reference in this issue to the words "sentence" and "illegal," he fails to cite any authority that a waiver of the right to appeal will be disregarded if the defendant contends his sentence is illegal. There is some indication that even a complaint about an illegal sentence is not appropriate for an appellate court to reach when appeal has been waived. *See Ex parte Garza*, 192 S.W.3d 658, 661 (Tex. App.—Corpus Christi 2006, no pet.)

(stating in case involving potentially illegal sentence from alleged improper cumulation order that because of waiver of right to appeal, defendant had no opportunity to seek relief on direct appeal).

In any case, Appellant does not go as far as to contend his sentence was illegal; he only suggests that "if" his sentence is illegal, then it is unauthorized and should be reversed.[2] App. Brief at 22, 24. Instead of complaining of an illegal sentence, Appellant's issue is that, perhaps, the State failed to sufficiently prove the non-theft priors alleged for punishment enhancement. *See* App. Brief at 24 (stating "it is not clear from the record whether . . . [the non-theft prior convictions alleged for punishment enhancement] were properly presented, pleaded or proved."). Because Appellant waived his right to appeal this issue in exchange for his 5-year sentence, this Court should not address this point of error.

---

[2] Appellant's sentence is not illegal since he bargained for a 5-year sentence on an enhanced state-jail felony theft. CR 73-74. Even if Appellant was not expressly asked to enter a plea of true to the punishment enhancement allegations and the plea paperwork referenced Appellant's plea of true to enhancements in the "charging instrument" rather than the notice of enhancement (CR 75), the punishment proceeding was uncontested. 5 RR 35-43. And Appellant reaped the benefit of the State's agreement to the 5-year sentence.

## II. Sufficient evidence supports enhancement to a second-degree felony

Even if the Court were to reach this issue, sufficient evidence supports the enhancement of the offense to a second-degree felony. A theft offense is a state-jail felony if the value of the property stolen is less than $1,500 and the defendant has two prior theft convictions. Tex. Penal Code § 31.03(e)(4)(D). But while a state-jail felony may ordinarily be enhanced to a second-degree felony (under the habitual offender statutes in § 12.425(b)) if the defendant has two prior sequential felony convictions, a defendant's prior theft convictions—regardless of their number or degree—cannot serve to enhance the punishment for a subsequent theft under $1500 beyond that of a state-jail felony. *Rawlings v. State*, 602 S.W.2d 268, 269-70 (Tex. Crim. App. 1980) (holding that in predecessor to § 31.03(e)(4)(D), the special theft enhancement provision for "any grade of theft" controls over the general enhancement provisions in Chapter 12). Consequently, the punishment for state-jail-felony theft of property less than $1500 may be further enhanced under Chapter 12 only if the prior felony convictions used for that purpose are for an offense other than theft. *Id*.

In *Foster*, which was decided the same day as *Rawlings*, the Court of Criminal Appeals implicitly held that burglary is a non-theft felony that can be used to further enhance a felony theft under Chapter 12. *Foster v. State*, 603 S.W.2d 879, 880 (Tex. Crim. App. 1980). The Dallas Court of Appeals has since explicitly held that burglary is a non-theft felony, reasoning that burglary requires only an *intent* to commit theft and that theft requires an actual, completed unlawful appropriation of property. *Chambers v. State*, 736 S.W.2d 192, 196 (Tex. App.—Dallas 1987, no pet.); *see also Smallwood v. State*, 827 S.W.2d 34, 37 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (finding burglary of a building is a non-theft offense).

Here, the evidence in the plea hearing at punishment was sufficient to establish that Appellant had two prior sequential non-theft felonies. That evidence consisted of Appellant's admission to two prior convictions in particular and the State's evidence of the judgment and sentence for those two convictions. In particular, Appellant agreed under oath that he had convictions for:

- a 2004 delivery of a controlled substance;
- a 1983 burglary of a motor vehicle with intent to commit theft, for which he received a 4-year sentence.

5 RR 41-43. And the trial court admitted the judgment and sentence of Appellant's convictions for:

- an April 6, 2006 Dallas County conviction for second-degree felony delivery of a controlled substance, committed in 2004 (SX 5 at 6 RR 14); and
- a 1983 Harris County conviction for burglary of a motor vehicle with intent to commit theft, for which he received a 4-year sentence (SX 7 at 6 RR 33).

These convictions corresponded to the State's first and fifth numbered enhancement allegations in its Notice of Intent to Sentence Defendant Under the Habitual Offender Provision. CR 56, 58.

Although Appellant argues that burglary of a motor vehicle with intent to commit theft is "tantamount to a 'theft' conviction," (App. Brief at 23), both offenses have elements that are not contained in the other. As with burglary, burglary of a motor vehicle with intent to commit theft requires no completed theft or appropriation of property. Tex. Penal Code § 30.04. And theft requires no entry into a vehicle. Tex. Penal Code § 31.03(a). Consequently, burglary of a motor vehicle is a non-theft offense that can be used to enhance a state-jail felony theft to a second-degree offense. *Lackey v. State*, 881 S.W.2d 418, 419 (Tex. App.—Dallas 1994, pet. ref'd) (suggesting in

dicta that burglary of a motor vehicle is a non-theft conviction, though defendant had not alleged it was not).

Even if burglary of a motor vehicle constitutes a theft-conviction for purposes of § 31.03(e)(4)(D), there were other judgments and sentences admitted in the hearing that would qualify as non-theft felony convictions that were final before Appellant committed the 2004 delivery of a controlled substance. State's Exhibit 6 shows Appellant was convicted of second-degree possession of cocaine in 1994 and of burglary in 1988. SX 6 at 6 RR 25, 27. Both of these offenses were in the State's notice of enhancement, and either could have been used along with the 2004 delivery of a controlled substance prior to enhance Appellant to a second-degree felony. *See Foster*, 603 S.W.2d at 880.

Either because the evidence supported the enhancement of the state-jail felony theft to a second-degree offense or because Appellant waived consideration of this issue on appeal, this issue should be overruled.

**Issue Five**
(Details of Appellant's prior theft convictions)

It was not error to inform the jury of the details of Appellant's prior theft convictions either through the State's evidence of those prior convictions or in the jury charge. Appellant pleaded true to the prior theft convictions, which had the effect of removing that element from the jury's consideration. But because Appellant did not ask the State to forgo admitting its evidence of his priors in exchange for his plea of true, he forfeited any complaint about the admission of that evidence. Any error in including the details of the prior offense in the charge was harmless since the jury properly heard the same facts when the State read the indictment.

## I. The law involving jurisdictional priors

Article 36.01(a)(1) of the Code of Criminal Procedure indicates that the State may read indictment allegations of prior convictions alleged for jurisdiction at the guilt phase of trial. Tex. Code Crim. Proc. art. 36.01(a)(1). Following the Supreme Court's decision in *Old Chief v. United States*, the Court of Criminal Appeals held that while the State may read the minimum number of prior conviction allegations in the indictment, if a defendant offers to stipulate to the two prior DWI convictions, the State may not offer proof of the prior convictions beyond the stipulation. *Old Chief v. United States*, 519

U.S. 172, 192 (1997); *Tamez v. State,* 11 S.W.3d 198, 202 (Tex. Crim. App. 2000). The offer to stipulate is one that the State may not refuse. *Martin v. State*, 200 S.W.3d 635, 638 (Tex. Crim. App. 2006). This principle has been applied to cases involving multiple theft convictions. *See Marbella v. State*, No. 646-00, 2003 WL 1845140, at *1 (Tex. Crim. App. Apr. 9, 2003) (not designated for publication); *but see Minnamon v. State*, 988 S.W.2d 408, 410 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (finding *Old Chief* did not apply to third-offender theft).

In this single issue, Appellant complains about the admission of the details of his prior theft convictions—both in the evidence the State admitted (SX 3 & 4) and the mention in the jury charge of the date, court, county of conviction, cause number, and the like regarding his prior convictions. Because Appellant pleaded true[3] to the prior theft convictions alleged in the indictment, the jurisdictional element was no longer in contention. But as is explained below,

[3] The trial court asked Appellant how he pled to the jurisdictional paragraphs in the indictment, and Appellant stated in open court before the jury, "1994 is true, 2004 is true." 4 RR 131. The cases following *Tamez* appear to involve the situation of a general plea of not guilty to the offense, rather than a plea of true to an element at the guilt phase. As a result, the judicial admission in the *Tamez* line of cases came in the form of a written stipulation of evidence.

Appellant did not take the steps necessary to prevent the State from admitting evidence of his priors.

The State will address Appellant's evidentiary issue first and then his jury charge issue.

## II. Admission of other evidence of jurisdictional priors

Appellant forfeited his complaint about the admission of evidence of the jurisdictional prior convictions by failing to object and by failing to condition his plea of true on the State forgoing any other evidence of his prior theft convictions.

To preserve error for appellate review, a party must object at trial and obtain an adverse ruling. Tex. R. App. P. 33.1(a). The Court of Criminal Appeals has consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008).

Here, Appellant stated he had no objection when the State offered into evidence the public records showing his two prior convictions (SX 3 & 4). 4 RR 134. By failing to object to their

admission, Appellant forfeited his complaint that the judgments of convictions should not have been admitted.

While Appellant cites *Tamez* and its progeny in support of his argument that the details of his prior convictions should not have been admitted into evidence in light of his plea, those cases are inapplicable without the defense actually proposing or offering to trade a stipulation for the State's other evidence of jurisdictional priors. "[I]n order to benefit from *Old Chief*, a defendant with a prior felony conviction first must remember *to offer* to stipulate to the fact of his prior conviction at trial." Amina Quargnali-Linsley, *Evidence Law-Boundaries, Balancing, and Prior Felony Convictions: Federal Rule of Evidence Rule 403 After United States v. Old Chief*, 28 N.M.L. Rev. 583, 604 (1998) (emphasis added). It is when the accused "offers to stipulate" to the jurisdictional prior convictions that the probative value of evidence of those convictions is substantially outweighed by the danger of unfair prejudice. *See Robles v. State*, 85 S.W.3d 211, 213 (Tex. Crim. App. 2002). In the absence of a stipulation to evidence, judgments from prior convictions are relevant to show the existence of those prior convictions. *Id.* at 212. It is thus incumbent on

Appellant to extend an *offer*—to make it clear that any concession to the jurisdictional element is *contingent*—in order to preclude admission of judgments from prior convictions. *See id.* As the Fourteenth Court of Appeals explained in an unpublished decision:

> Before the rule in *Tamez* will foreclose the prosecution from introducing evidence of a defendant's prior DWI convictions, the defendant must actually offer to stipulate to the relevant prior convictions.

*Nall v. State*, 14-06-00345-CR, 2007 WL 2481171, at *4 (Tex. App.—Houston [14th Dist.] Sept. 4, 2007, no pet.) (not designated for publication) (holding that defendant's failure to stipulate to the jurisdictional prior convictions takes the defendant's case out of the rule in *Tamez*); *see also Dunn v. State*, 08-02-00516-CR, 2004 WL 1858352, at *6 (Tex. App.—El Paso Aug. 19, 2004, pet. ref'd) (not designated for publication) (finding defendant's failure to object to admission of evidence of priors waived error despite contemplation and then withdrawal of stipulation by the defense).

In the instant case, Appellant pleaded true to the two jurisdictional prior offenses, but there is no discussion in the record of any offer to enter this plea *in exchange* for the State forgoing any other evidence of his prior convictions. From all indications,

Appellant's plea of true was one-sided and not conditioned on the State giving up any of its proof. 4 RR 129-30.

Moreover, the stipulation of evidence contemplated in *Tamez* and its progeny is one in written form that the State could introduce into evidence. *Hollen v. State*, 117 S.W.3d 798, 802 (Tex. Crim. App. 2003). There is no indication in the record of any written stipulation that the State would have been able to introduce in lieu of its own evidence of Appellant's prior convictions.

Because Appellant never conditioned his plea of true on the State withholding its own evidence of his prior theft convictions and because he never objected when the State offered that other evidence, he has forfeited his complaint that the State's exhibits informed the jury of some of the particulars of his prior theft convictions.

## III. Details of prior thefts in the jury charge

Like Appellant's evidentiary issue, Appellant's complaint about the jury charge is also without merit. Because the jury charge tracked the language of the indictment, at most the charge informed the jury of the same details about his prior convictions that they already

heard during the reading of the indictment. The jury charge instructed the jury:

> A theft under $1500 becomes a felony if the defendant was previously convicted two times of the offense of theft. The State has alleged that **GARY MOORE** has been previously convicted two times of the offense of theft, to wit: on the 14th day of July, A.D. 2004, in the County Criminal Court # 3 of Tarrant County, Texas, in cause number 0878309001, on the docket of said court, the said Defendant, under the name of Gary Moore, was duly and legally convicted in the said last named court of the offense of Theft of Property more than fifty dollars ($50.00) but less than five hundred dollars ($500.00) upon an information then legally pending in said last named court of which said court had jurisdiction; and on the 30th day of March, A.D., 1994, in the County Court at Law #4 of El Paso County, Texas, in cause number 940C03986, on the docket of said court, the said defendant, under the name of Gary Celestine, was duly and legally convicted in the said last named court of the offense of Theft>=$20 <$200 upon an information then legally pending in said last named court of which said court had jurisdiction. The Defendant has stipulated that these allegations are true, and you are instructed to find them true. You may not consider the existence of these prior convictions for any purpose other than establishing the jurisdictional element of two prior convictions. You are further instructed that evidence of these prior convictions cannot be considered as evidence that the Defendant committed theft on the 12th day of December, 2012.

CR 81-82. Although both the jury charge and the prosecutor in closing argument used the term "stipulated," it was used in the sense that Appellant was agreeing or conceding the truth of the prior

convictions. Again, no evidence in the record indicates Appellant's plea of true was conditional.

While Appellant did not seek to prevent the State from introducing other evidence of his priors, his plea of true nevertheless had a legal effect: it withdrew the jurisdictional element from contention. Ordinarily, the State has the burden of proving a prior conviction alleged for enhancement, but where a defendant pleads true to the prior conviction, he removes this burden from the State. *Harvey v. State*, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981). Judicial admissions are formal concessions in the pleadings in the case or stipulations by a party or counsel that have the effect of withdrawing a fact from issue. *Bryant v. State*, 187 S.W.3d 397, 400 (Tex. Crim. App. 2005) (citing 2 John W. Strong, et al., McCormick on Evidence § 255 (5th ed.1999)); *see also Woods v. State*, 398 S.W.3d 396, 400 (Tex. App.—Texarkana 2013, pet. ref'd) (finding oral stipulation in open court that defendant was admitting two jurisdictional priors was sufficient to sustain conviction in plea proceeding despite lack of formal judgment proving prior conviction). As the courts of appeals have held in the context of punishment enhancements, when the

defendant pleads true to an enhancement allegation, the trial court may expressly instruct the jury to find the enhancement allegations true. *Chandler v. State*, 21 S.W.3d 922, 923 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Urbano v. State*, 808 S.W.2d 519, 523 (Tex. App.—Houston [14th Dist.] 1991, no pet.); *Gonzalez v. State*, No. 13-05-115-CR, 2006 WL 488681, at *1 (Tex. App.—Corpus Christi Mar. 2, 2006, no pet.) (not designated for publication); *Webb v. State*, 05-00-02104-CR, 2002 WL 851730, at *4 (Tex. App.—Dallas May 6, 2002, no pet.) (not designated for publication).

Here, Appellant does not contend that it was improper to instruct the jury to find true the element of two prior theft convictions. Indeed, he had no objection to the charge at trial. 5 RR 9. But he complains that the jury charge should not have included the details of his prior theft convictions. App. Brief at 24-27.

While not exactly on all fours, it is helpful to consider case law where there was a formal stipulation in exchange for the State forgoing other evidence of jurisdictional prior convictions. Appellant cites *Freeman* for the proposition that a jury instruction regarding the two prior DWI convictions need not refer to particulars of those

two priors. *Freeman v. State*, 413 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). While this is true enough, *Freeman* does not *prohibit* the charge from referring to the particulars. More importantly, *Martin* (which *Freeman* relies on) expressly approves of the kind of jury instruction given in this case:

> The trial court can instruct the jury about the stipulated prior convictions in any of several different ways. One way is to include the *specific indictment allegations of the two prior DWI convictions in the application paragraph* with a separate paragraph stating that the defendant has stipulated to the existence of those two prior convictions, thus that jurisdictional element has been established.

*Martin*, 200 S.W.3d at 639. Because the jury charge in the instant case complied with one of the instructions sanctioned by the Court of Criminal Appeals in *Martin*, it was not erroneous.

Even if it was error to include all the particulars of the court and date of conviction in the jury charge, this could not have resulted in egregious harm. Where there was no objection to the complained-of charge error at trial, as there was not here, a defendant can obtain a reversal only if egregious harm resulted from the error. *Taylor v. State,* 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (citing *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). The

jury would have heard this same information when the State read the indictment and again when the jury considered the State's Exhibits (SX 3 & 4). Further mention in the charge of these largely incidental details would have been insignificant at best.

This issue should be overruled.

## Prayer

Appellant's trial was without prejudicial error. The State prays that this Court will affirm Appellant's conviction and sentence.

Respectfully submitted,

**Greg Willis**
Criminal District Attorney
Collin County, Texas

**John R. Rolater, Jr.**
Asst. Criminal District Attorney
Chief of the Appellate Division

/s/ Emily Johnson-Liu
**Emily Johnson-Liu**
Asst. Criminal District Attorney
2100 Bloomdale Rd., Suite 200
McKinney, TX 75071
State Bar No. 24032600
(972) 548-4331
FAX (214) 491-4860
ejohnson-liu@co.collin.tx.us

## Certificate of Service

The State has e-served counsel for Appellant, the Honorable Randell Johnson, through the eFileTexas.gov filing system and sent a courtesy copy by e-mail to wrjlaw@aol.com on this, the 16th day of January 2015.

/s/ Emily Johnson-Liu
Assistant Criminal District Attorney

## Certificate of Compliance

This brief complies with the word limitations in Texas Rule of Appellate Procedure 9.4(i)(2). In reliance on the word count of the computer program used to prepare this brief, the undersigned attorney certifies that this brief contains 8,777 words, exclusive of the sections of the brief exempted by Rule 9.4(i)(1).

/s/ Emily Johnson-Liu
Assistant Criminal District Attorney